| | FILED | ____ LODGED |
|---|---|---|
| | ____ RECEIVED | ____ COPY |

APR - 1 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY NM                    DEPUTY

# UNITED STATES DISTRICT COURT

For the

District of Arizona

In the Matter of the Search of cellular telephone )
further described in Attachment A )
)    Case No.  26 -1256 MB
)
)

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer of an attorney for the government requests the search of the following person or property located in the _____ District of _____ Arizona _____
*(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*

**SEE ATTACHMENT B**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seized the person or property.

**YOU ARE COMMANDED** to executed this warrant on or before ____ 4|15|2026 _____
                                                                                                   *(not to exceed 14 days)*

☐  in the daytime 6:00 a.m. to 10 p.m.  ☒  at any time in the day or night as I find reasonable cause has been established

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Any United States Magistrate Judge _____ On Duty in the District of Arizona _____.

☐  I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for the delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.

☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  4|1|2026 at 1:28pm    _____
                                                                                        *Judge's signature*

City and state:    ____ Yuma, Arizona ____    Hon. James F. Metcalf, United States Magistrate Judge
                                                                              *Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## ATTACHMENT A

## DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS TO BE SEARCHED

### PROPERTY:

The following cellular phone is more fully described as:

1.    Cellular Phones:
   a.  Black Samsung Galaxy S10 Cellular Phone with protective case, and IMEI: 35269510031292;

### ITEMS:

Search for all items listed within ATTACHMENT B.

## ATTACHMENT B

## ITEMS TO BE SEARCHED AND SEIZED

1.  Image or movie files, or any other recordings of visual depictions of child pornography and files containing images of child pornography in any form wherever it may be stored or found on the device;

2.  Any information relating to any individual relating to an interest in child pornography, or an interest to distribute, receive, or possess child pornography;

3.  Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received using computer, or some other facility or means of interstate or foreign commerce, common carrier, of the U.S. mail including:

    a.  Correspondence to and from any individual(s) including electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, by computer, of child pornography;

    b.  Ledgers and records bearing on the productions, reproduction, receipt, shipment, orders, requests, trades, purchases or transactions of any kind involving the transmission through interstate or foreign commerce, including by U.S. mail or by computer of child pornography;

    c.  Records, documents, or materials, including address books, mailing lists, supplier lists, mailing address labels, and documents and records pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connections with the purchase, sale, trade or transmission of child pornography, through interstate commerce including by U.S. mail or by computer;

    d.  Records, documents or materials, including address books, names and lists of names and addresses of minors visually depicted in child pornography; and

    e.  Records of Internet usage, including user names and e-mail addresses and identities assumed for the purposes of communication on the Internet to purchase, sell, trade, transmit or acquire child pornography.  These records may include ISP records, i.e., billing and subscriber

records, chat room logs, e-mail messages and include electronic files in a computer and on other data storage mediums, including CDs or DVDs.

4.    Any data which evidences ownership or use of the DEVICES, including payment for Internet access or other storage devices, disks, or similar containers for electronic evidence.

5.    a.    Evidence of who used, owned, or controlled the DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

b.    Evidence of software that would allow others to control the DEVICES, such as viruses, Trojan horses, and other forms of malicious software;

c.    Evidence of the presence or lack of such malicious software;

d.    Evidence of the attachment to the DEVICES of other storage devices, disks, CD-ROMS, or similar containers for electronic evidence;

e.    Evidence of the times the DEVICES were used; and

f.    Passwords, encryption keys, and other access devices that may be necessary to access the DEVICES.

g.    Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer;

h.    Records of or information about Internet Protocol addresses used by the computer;

6.    Any and all communications LARA engaged in any format, to include any and all social media platforms and references to social media platforms, and including text messages, email messages, instant messages, and any evidence of computer based communications that access voice applications to communicate.

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

FILED ___ LODGED
___ RECEIVED ___ COPY

APR - 1 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

In the Matter of the Search of:

_____

cellular telephone further described in Attachment A

Case No. 26-1256 MB

_____

## ELECTRONICALLY SUBMITTED APPLICATION FOR A SEARCH WARRANT

I, Special Agent, Rebekah R. Stanley, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the District of Arizona,

### As further described in Attachment A.

The person or property to be searched, described above, is believed to conceal:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(4)(B) | Possession of Child Pornography |

The application is based on these facts:

### See attached Affidavit of Homeland Security Special Agent Rebekah R. Stanley

☒ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Ross Arellano Edwards

_____ Sworn by Telephone

Digitally signed by Ross Arellano Edwards
Date: 2026.04.01 11:47:57 -07'00'

Date and time issued: ___4\1\2026___

City and State: Yuma, Arizona

REBEKAH R STANLEY Digitally signed by REBEKAH R STANLEY Date: 2026.04.01 11:53:13 -07'00'

*Applicant's Signature*

Rebekah R. Stanley, Special Agent
*Applicant's printed name and title*

*Judge's signature*

Honorable James F. Metcalf, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## DESCRIPTION OF THE PERSON, PROPERTY, AND ITEMS TO BE SEARCHED

### PROPERTY:

The following cellular phone is more fully described as:

1.   Cellular Phones:
   a.   Black Samsung Galaxy S10 Cellular Phone with protective case, and IMEI: 35269510031292;

### ITEMS:

Search for all items listed within ATTACHMENT B.

## ATTACHMENT B

## ITEMS TO BE SEARCHED AND SEIZED

1.  Image or movie files, or any other recordings of visual depictions of child pornography and files containing images of child pornography in any form wherever it may be stored or found on the device;

2.  Any information relating to any individual relating to an interest in child pornography, or an interest to distribute, receive, or possess child pornography;

3.  Information, correspondence, records, documents or other materials pertaining to the possession, receipt or distribution of child pornography, that were transmitted or received using computer, or some other facility or means of interstate or foreign commerce, common carrier, of the U.S. mail including:

    a.  Correspondence to and from any individual(s) including electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, by computer, of child pornography;

    b.  Ledgers and records bearing on the productions, reproduction, receipt, shipment, orders, requests, trades, purchases or transactions of any kind involving the transmission through interstate or foreign commerce, including by U.S. mail or by computer of child pornography;

    c.  Records, documents, or materials, including address books, mailing lists, supplier lists, mailing address labels, and documents and records pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connections with the purchase, sale, trade or transmission of child pornography, through interstate commerce including by U.S. mail or by computer;

    d.  Records, documents or materials, including address books, names and lists of names and addresses of minors visually depicted in child pornography; and

    e.  Records of Internet usage, including user names and e-mail addresses and identities assumed for the purposes of communication on the Internet to purchase, sell, trade, transmit or acquire child pornography.  These records may include ISP records, i.e., billing and subscriber

records, chat room logs, e-mail messages and include electronic files in a computer and on other data storage mediums, including CDs or DVDs.

4. Any data which evidences ownership or use of the DEVICES, including payment for Internet access or other storage devices, disks, or similar containers for electronic evidence.

5. a. Evidence of who used, owned, or controlled the DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

b. Evidence of software that would allow others to control the DEVICES, such as viruses, Trojan horses, and other forms of malicious software;

c. Evidence of the presence or lack of such malicious software;

d. Evidence of the attachment to the DEVICES of other storage devices, disks, CD-ROMS, or similar containers for electronic evidence;

e. Evidence of the times the DEVICES were used; and

f. Passwords, encryption keys, and other access devices that may be necessary to access the DEVICES.

g. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer;

h. Records of or information about Internet Protocol addresses used by the computer;

6. Any and all communications LARA engaged in any format, to include any and all social media platforms and references to social media platforms, and including text messages, email messages, instant messages, and any evidence of computer based communications that access voice applications to communicate.

**AFFIDAVIT IN SUPPORT OF**

**AN APPLICATION FOR A SEARCH WARRANT**

I, Rebekah Stanley, a Special Agent with Homeland Security Investigations (HSI), being duly sworn, deposes and states as follows:

**INTRODUCTION**

On November 22, 2024, the Honorable James F. Metcalf authorized a Search Warrant for a Black Samsung Galaxy S10 Cellular Phone (DEVICE) (24-2808MB). The extraction of information as authorized by that Search Warrant was conducted within the designated window. An exact forensic copy of the device was placed on to an external hard drive. Other programs, such as CellBrite, were then used to examine the forensic copy on the hard drive. The charged images and videos were also copied to other devices belonging to HSI. Defendant hired a forensic expert to examine the copy of DEVICE on the hard drive and the examination is set to take place on April 15, 2026. In preparation for the expert examination, HSI forensic examiners learned that hard drive with a copy of DEVICE was no longer functional. Most likely due to a power outage that occurred while it was in operation. DEVICE itself is still fully preserved and was in a secure vault at the time of the power outage. I am now seeking an additional warrant out of an abundance of caution. The following is the probable cause as it was on the original Search Warrant:

The facts of this case, as more fully detailed herein, are that Luis Eduardo LARA Gonzalez (hereafter LARA), an approximately 20-year old man and resident of Mexico, has engaged in violation of 18 U.S.C. § 2252(a)(4)(B) (Possession of Child Pornography). These violations occurred as a result of LARA downloading the videos.  I am requesting a search warrant of the cellphone to locate the downloads and any messages relating to the receipt of the downloads. The cellphone described in this warrant is currently in the possession of the Homeland Security Investigations, within the District of Arizona.

**PRELIMINARY BACKGROUND INFORMATION**

1.    I am a Special Agent (SA) with Homeland Security Investigations (HSI) assigned to the Office of the Assistant Special Agent in Charge, Yuma, Arizona. I have been so employed since September 2023, and I am currently assigned to the Border Enforcement Security Task Force Unit.

1

I am a graduate of the Criminal Investigator Training Program and Homeland Security Investigations Special Agent Training (HSISAT) at the Federal Law Enforcement Training Center (FLETC). I received specialized training to include, but not limited to: investigating violations of federal law relating to human smuggling, as well as training in drug smuggling, drug identification, immigration law, defensive tactics, firearms, and criminal law. I am an investigative law enforcement officer of the United States within the meaning of Title 18 United States Code, Section 2510(7), and empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 8, United States Code, Section 1324. Prior to my employment as a Special Agent with Homeland Security Investigations, I was employed as a police officer with the Beaumont Police Department and a Special Investigator with the State of Texas. My educational background includes a Bachelor of Science (BS) degree in Criminal Justice from Lamar University in 2010 and a Master of Arts (MA) degree in Forensic Psychology from The Chicago School of Professional Psychology. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. This information comes from my investigation and from other law enforcement officers and witnesses.

2.     As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3.     Based on my training and experience, and the facts set forth in this affidavit, I submit there is probable cause to believe that a violation of 18 U.S.C. §§ 2252(a)(4)(B) (possession of child pornography) (the "TARGET OFFENSE") have been committed by LARA, and that there is probable cause to search the DEVICE for evidence, fruits, and instrumentalities of violations of the TARGET OFFENSE, as further described in Attachments B. This Court has jurisdiction to issue the warrants for the DEVICES because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

4.     This affidavit serves to provide support for an application authorizing law enforcement to search the following (hereinafter referred to as the "DEVICE"):

2

a. As described in Attachment A, the following DEVICE:

    i. Cellular Phones:

        (1) Black Samsung Galaxy S10 Cellular Phone with protective case, and IMEI: 35269510031292 (information relating to this account can be found in paragraph 17.a.ii., below);

5. The statements in this affidavit are based in part on information and reports provided by the other law enforcement agencies and my experience and background as a Special Agent of HSI. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrants.

## DEFINITIONS

6. The following non-exhaustive list of definitions applies to this Affidavit and Attachments A and B (collectively referred to as "warrant"):

a. "Child Pornography" is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. See 18 U.S.C. § 2256(8).

b. "Child erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors, but that are not, in and of themselves, obscene or illegal. In contrast to "child pornography," this material does not necessarily depict minors in sexually explicit poses or positions. Some of the more common types of child erotica include photographs that are not sexually explicit, drawings, sketches, fantasy writing, and diaries. See Kenneth V. Lanning, Child Molesters: A Behavioral Analysis (2001) at 65. Federal courts have recognized the evidentiary value of child erotica and its admissibility in child pornography cases. E.g., United States v. Cross, 928 F.2d

3

1030, 1050 (11th Cir. 1991) (testimony about persons deriving sexual satisfaction from and collecting non-sexual photographs of children admissible to show intent and explain actions of defendant); United States v. Caldwell, 181 F.3d 104, 1999 WL 238655, *7 (6th Cir. 1999)(unpublished)(child erotica admissible under Federal Rule of Evidence 404(b) to show knowledge or intent)(table case).

c.    "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image.  See also 18 U.S.C. § 2256(5).

d.    "Minor" means any person under the age of eighteen years or who appears to be under the age of eighteen years.  See also 18 U.S.C. § 2256(1).

e.    "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, genital-anal, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.  See also 18 U.S.C. § 2256(2).

f.    "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."  See also 18 U.S.C. § 1030(e)(1).

g.    "Computer hardware" consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices), peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

4

h.      "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way they work.  Computer software is stored in electronic, magnetic or other digital form.  It commonly includes programs to run operating systems, applications and utilities.

i.      "Computer-related documentation" consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software or other related items.

j.      "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation or data.  Data security devices may consist of hardware, software or other programming code.  A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

k.      "Internet Service Providers" (ISPs) are commercial organizations, which provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage and co-location of computers and other communications equipment.  ISPs can offer various means to access the Internet, including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription.  ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports.  Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox and the subscriber typically creates a password for the account.  By using a computer equipped with a telephone or cable modem, the subscriber can

establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and password or in the event that the router is wireless and unsecured, can be accessed by anyone within close proximity to the physical location of the wireless router.

l.    "ISP records" are records maintained by ISPs pertaining to their subscribers (regardless of whether those subscribers are individuals or entities).  These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format.  ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use.  This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files.

m.    "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.  IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.

n.    "Records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital

6

Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

o.    "Digital device" includes any electronic system or device capable of storing and/or processing data in digital form, including the following:  central processing units; laptop or notebook computers; PDAs; wireless communication devices such as telephone paging devices, beepers and mobile telephones; peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors and drives intended for removable media; related communications devices such as modems, cables and connections; storage media such as hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips; and security devices.

p.    "Peer-to-peer file-sharing" (P2P) is a method of communication available to Internet users through the use of special software.  Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network.  A user first obtains the P2P software, which can be downloaded from the Internet.  In general, P2P software allows the user to set up files on a computer to be shared with outers running compatible P2P software.  A user obtains files by opening the P2P software on the user's computer and conducting searches for files that are currently being shared on another user's computer.

q.    "Image" or "copy" refers to an accurate reproduction of information contained on an original physical item, independent of the electronic storage device.  "Imaging" or "copying" maintains contents, but attributes may change during the reproduction.

r.    "Hash value" refers to a mathematical algorithm generated against data to produce a numeric value representative of that data.  A hash value may be run on media to find the precise data from which the value was generated.  Hash values cannot be used to find other data.

s.    "Compressed file" refers to a file that has been reduced in size through a

7

compression algorithm to save disk space. The act of compressing a file will make it unreadable to most programs until the file is uncompressed.

t.    "Domain Name" refers to the common, easy to remember names associated with an Internet Protocol address.   For example, a domain name of www.usdoj.gov refers to the Internet Protocol address of 149.101.1.32.   Domain names are typically strings of alphanumeric characters with each level delimited by a period.   Each level, read backwards - from right to left- further identifies parts of an organization.   Examples of first level or top-level domains are typically .com for commercial organizations, .gov for the governmental organizations, .org for organizations, and .edu for educational organizations.   Second level names will further identify the organization.   For example, usdoj.gov further identifies the United States governmental agency to be the Department of Justice.   Additional levels may exist as needed until each machine is uniquely identifiable.   For example, www.usdoj.gov identifies the world wide web server located at the United States Department of Justice, which is part of the United States government.

u.    "Log files" are records automatically produced by computer programs to document electronic events that occur on computers.   Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors.   Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a website was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

v.    "Hyperlink" refers to an item on a web page which, when selected, transfers the user directly to another location in a hypertext document or to some other web page.

w.    "Website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Mark-up Language (HTML) and is transmitted from web servers to various web clients via Hyper-

8

Text Transport Protocol (HTTP).

x.     "Uniform Resource Locator" or Universal Resource Locator" (URL) is the unique address for a file that is accessible on the Internet.  For example, a common way to get to a website is to enter the URL of the website's home page file in the Web browser's address line.  Additionally, any file within that website can be specified with a URL.  The URL contains the name of the protocol to be used to access the file resource, a domain name that identifies a specific computer on the Internet, and a pathname, a hierarchical description that specifies the location of a file in that computer.

y.     "Remote Storage" refers to offsite data storage, where files are stored online, on a server or data storage device located elsewhere.  Remote storage is typically accessible only with a user ID and password and can be accessed from any computer with Internet access.  Often, remote storage locations can be mapped as a folder or drive on a computer where they can be accessed and used just like any other file, drive or device connected to the computer. Typically, this mapping is severed when a computer is logged off or powered off.  Many remote storage service providers store data in an encrypted format, where the data can only be accessed with the user's user ID and password.  In such cases, the service provider would not be able to access the data, or provide it to law enforcement, in an unencrypted form.  If a remote storage location is attached or mapped to a computer, copying the data on-scene may be the only way to access the data in the future.

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY AND ONLINE CHILD EXPLOITATION

7.     Based upon my knowledge, training and experience in online child exploitation and child pornography investigations, as well as the experience and training of other law enforcement officers with whom I have had discussions, I have learned the following:

a.     Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, stored and communicated as a commodity and a further tool of online child exploitation.

b.      Individuals can transfer photographs from a camera onto a computer-readable format with a variety of devices, including scanners, memory card readers, or directly from digital cameras.

c.      Modems allow computers to connect to another computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.

d.      The capability of a computer to store images in digital form makes the computer itself an ideal repository for child pornography.  As explained further below, the storage capacity of electronic media used in home computers has increased tremendously within the last several years.  These drives can store extreme amounts of visual images at very high resolution.

e.      The Internet, the World Wide Web and other Internet components afford individuals many different and relatively secure and anonymous venues for obtaining, viewing and trading child pornography or for communicating with others to do so or to entice children.

f.      Individuals can use online resources to retrieve, store and share child pornography, including services offered by Internet Portals such as Google, America Online (AOL), Yahoo! and Hotmail, among others.  Online services allow a user to set up an account providing e-mail and instant messaging services, as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  Evidence of such online storage of child pornography is often found on the user's computer.  And even in cases where online storage is used, evidence of child pornography can be found on the user's computer in most cases.

g.      As is the case with most digital technology, computer communications can be saved or stored on hardware and computer storage media use for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example,

10

"bookmarked" files.  However, digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others).  In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.  Such information is often maintained for very long periods of time until overwritten by other data.

h.     The interaction between software applications and the computer operating systems often results in material obtained from the Internet being stored multiple times, and even in different locations, on a computer hard drive without the user's knowledge. Even if the computer user is sophisticated and understands this automatic storage of information on his/her computer's hard drive, attempts at deleting the material often fail because the material may be automatically stored multiple times and in multiple locations within the computer media.  As a result, digital data that may have evidentiary value to this investigation could exist in the user's computer media despite, and long after, attempts at deleting it.  A thorough search of this media could uncover evidence of receipt, distribution and possession of child pornography.

i.     Data that exists on a computer is particularly resilient to deletion.  Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet.  Electronic files downloaded to a hard drive can be stored for years at little to no cost.  Even when such files have been deleted, they can be recovered months or years later using readily-available forensic tools.  When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear, rather, the data remains on the hard drive until it is overwritten by new data.  Therefore, deleted files or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or

11

"recovery" file.   Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache.   The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.   Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed and more on a particular user's operating system, storage capacity, and computer habits.

## BACKGROUND ON COMPUTERS AND EVIDENCE ASSESSMENT PROCESS IN CHILD PORNOGRAPHY AND CHILD EXPLOITATION INVESTIGATIONS

8.     Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that segregating information before commencement of the review of digital evidence by the examining agent is inconsistent with the evidence assessment process in child pornography and online child exploitation investigations.   This is true in part because the items to be searched will not only contain child pornography but also will contain the identity of the user/possessor of the child pornography as well as evidence as to the programs and software used to obtain the child pornography, which may be located throughout the areas to be searched.

a.     As further described in Attachment B, this warrant seeks permission to locate not only computer files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes how the computers and cell phones were used, the purpose of their use, and who used them.   Additionally, the warrant seeks information about the possible location of other evidence.

b.     As described above and in Attachment B, this application seeks permission to search and seize certain records that might be found in the cell phone belonging to LARA, or containing information related to their interaction.   One form in which the records might be found is stored on a computer's hard drive, or other electronic media.   Some of these electronic records might take the form of files, documents, and other data that is user-generated.   Some of these electronic records, as explained below, might take

12

a form that becomes meaningful only upon forensic analysis.

c.      Although some of the records called for by this affidavit might be found in the form of user-generated documents (such as word processor, picture and movie files), computer hard drives or cell phones can contain other forms of electronic evidence that are not user-generated.   In particular, a computer hard drive may contain records of how a computer has been used, the purposes for which it was used and who has used these records, as described further in the attachments.   For instance, based upon my knowledge, training, and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know the following:

i.      Data on the hard drive not currently associated with any file can provide evidence of a file that was once on the hard drive but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

ii.     Virtual memory paging systems can leave traces of information on the hard drive that show what tasks and processes on the computer were recently in use.

iii.    Web browsers, e-mail programs and chat programs store configuration information on the hard drive that can reveal information such as online nicknames and passwords.

iv.     Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices and the times the computer was in use.

v.      Computer file systems can record information about the dates files were created and the sequence in which they were created.   This information may be evidence of a crime or indicate the existence and location of evidence in other locations on the hard drive.

d.      Further, in finding evidence of how a computer has been used, the purposes for which it was used and who has used it, sometimes it is necessary to establish that a

particular thing is not present on a hard drive or that a particular person (in the case of a multi-user computer) was not a user of the computer during the time(s) of the criminal activity. For instance, based upon my knowledge, training and experience, as well as information related to me by agents and others involved in the forensic examination of digital devices, I know that when a computer has more than one user, files can contain information indicating the dates and times that files were created as well as the sequence in which they were created, and, for example, by reviewing the Index.dat files (a system file that keeps track of historical activity conducted in the Internet Explorer application), whether a user accessed other information close in time to the file creation dates, times and sequences so as to establish user identity and exclude others from computer usage during times related to the criminal activity.

e.    Evidence of how a digital device has been used, what it has been used for and who has used it, may be the absence of particular data on a digital device and requires analysis of the digital device as a whole to demonstrate the absence of particular data. Evidence of the absence of particular data on a digital device is not segregable from the digital device.

f.    The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying a computer user and contextual evidence excluding a computer user. All of these types of evidence may indicate ownership, knowledge and intent.

g.    This type of evidence is not "data" that can be segregated, that is, this type of data cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators. Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how a computer behaves and how computers are used. Therefore, contextual information is necessary to understand the evidence described in Attachment A also falls within the scope of the warrant.

14

## SEARCH METHODOLOGY TO BE EMPLOYED

9.    The search methodology to be employed is as follows:

a.    All computers, computer hardware and any form of electronic storage that could contain evidence described in this warrant was seized for an off-site search for evidence that is described in the attachments of this warrant.   It is anticipated that mirror copies or images of such evidence will be made if the failure to do so could otherwise potentially alter the original evidence.

b.    Consistent with the information provided within this affidavit, contextual information necessary to understand the evidence, to identify the user/possessor of the child pornography, and to establish admissibility of the evidence in subsequent legal proceedings will also be sought by investigative agents.

c.    Additional techniques to be employed in analyzing the seized items will include (1) surveying various file directories and the individual files they contain; (2) opening files to determine their contents; (3) scanning storage areas, (4) performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in this affidavit and its attachments, and (5) performing any other data analysis techniques that may be necessary to locate and retrieve the evidence described in this affidavit and its attachments.

10.    Because it is expected that the computers, computer hardware and any form of electronic storage media may constitute (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband, or (4) evidence otherwise unlawfully possessed, it is anticipated that such evidence will not be returned to the owner and that it will be either forfeited or ultimately destroyed in accordance with the law at the conclusion of the case.

a.    Because of the large storage capacity as well as the possibility of hidden data within the computers, computer hardware and any form of electronic storage media, it is anticipated that there will be no way to ensure that contraband-free evidence could be returned to the user/possessor of the computer, computer hardware or any form of

electronic storage media, without first wiping such evidence clean. Wiping the original evidence clean would mean that the original evidence would be destroyed and thus, would be detrimental to the investigation and prosecution of this case.

b.    Further, because investigators cannot anticipate all potential defenses to the offenses in this affidavit, and as such, cannot anticipate the significance of the evidence that has been lawfully seized pursuant to this warrant, it is requested that all seized evidence be retained by law enforcement until the conclusion of legal proceedings or until other order of the court.

c.    If after careful inspection investigators determine that such computers, computer hardware and electronic storage media do not contain (1) instrumentality of the offense, (2) fruit of criminal activity, (3) contraband, (4) evidence otherwise unlawfully possessed, or (5) evidence of the person who committed the offense and under what circumstances the offense was committed, then such items seized will be returned.

## CHARACTERISTICS OF INDIVIDUALS INVOLVED IN THE DISTRIBUTION OF CHILD PORNOGRAPHY

11.    Based upon my knowledge, experience, and training in child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals involved in the possession and distribution of child pornography.    Those who possess and distribute child pornography:

a.    May receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.    May collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.    Such individuals oftentimes use these materials for their own sexual arousal and gratification.    Further, they may use these materials to

lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.    Often possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.    Often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the individual's residence to enable the collector to view the collection, which is valued highly.

e.    May correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.    Prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

**DETAILS OF THE INVESTIGATION**

12.    On October 4, 2024, at approximately 1548 hours, the defendant, Luis Eduardo LARA Gonzalez, presented himself for inspection and entry into the United States via the pedestrian lane at the San Luis, Arizona, Port of Entry (POE). While at the pedestrian inspection booth, LARA told the Customs and Border Protection Officer (CBPO) that he was going to Walmart in San Luis, Arizona. LARA gave a negative customs declaration and was allowed entry. CBPO observed LARA's side and back area as he walked away. The area below LARA's left underarm and stopping above his left hip was a severe, bulge. The CBPO stopped LARA by placing his hand on LARA's left, back area where the visible bulge was located. CBPO could feel the unusual bulge. At that point, CBPO knew by touch

17

there was a package under LARA's clothing. CBPO once again asked LARA if he had anything to declare. LARA stated, "yes." When asked what he possessed, LARA stated he knew that it was "drugs," but was not told what type of narcotics. CBPO removed the narcotics from LARA's body. There were two packages wrapped around LARA's body: one package held "multicolored pills," and the second package held a "white crystal like substance."

13.    CBPO tested the crystal-like substance at 1622 hours with Reagent Test Kit 923. The substance was positive for Methamphetamine properties. The Methamphetamine weighed 937 grams. CBPO tested the multi-colored pills at approximately 1634 hours with Rapid Response Kit. The substance was positive for Fentanyl properties. The Fentanyl weighed 1.08 kilograms.

14.    During a post-Miranda interview with Homeland Security Investigations SA Stanley and Task Force Officer (TFO) Rames Curiel, LARA admitted to knowing drugs were wrapped on his person. He was brought to a residence in Mexico by "JUNIOR" who he referred to as "GUNMAN." LARA referred to the residence as a "stash house" (a stash house is a slang term for a place where contraband is stored). At the residence, two males (unknown names) took out a package of "multi-colored pills" and a package of a "white rock" like substance from a grocery bag by the refrigerator. The males set the bags of narcotics on a table where they wrapped them in cellophane before wrapping the narcotics around LARA's torso. LARA believed the "white rock" was "ICE" (ICE is a slang term for Methamphetamine) because the males were "joking" about the narcotic "melting."

15.    LARA stated he was not informed he would be paid to bring the narcotics into the United States. He asked the males if he would be paid. LARA believed he would be paid approximately $1000.00 to $2000.00. The males did not answer LARA about receiving payment once arriving with the narcotics. LARA stated he was aware it was illegal to cross narcotics into the United States.

16.    JUNIOR drove LARA to the "line" for entry at the San Luis, AZ port. He advised LARA to delete the communication between LARA and the males prior to entering the Port of Entry. LARA deleted the messages. One of the males took a photograph of LARA. The photograph was going to be sent to an unknown female that the male claimed to be his sister. LARA was instructed to arrive at the "Exchange House" in San Luis, Arizona. At the Exchange House, the unknown female would pick LARA up in an unknown vehicle.

18

17. SA Stanley read aloud, and LARA read the HSI Consent to Search Cellular Device form. He verbally agreed, stated he understood what the form stated and signed the HSI Consent to Search Cellular Device form for the purpose of HSI searching the contents of LARA'S cell phone:

    i. Samsung Galaxy S10; IMEI: 35269510031292

18. SA Stanley transferred chain of custody to Certified Forensic Agent (CFA) Marco Rodriguez for forensic analysis. SA Rodriguez completed a forensic analysis of LARA's cellphone. SA Stanley reviewed the extracted information and discovered approximately 100 videos of Child Sexual Abuse Material (CSAM) that need to be analyzed in detail. The cellphone also had numerous application icons: Google, Facebook, Instagram, Reddit, Telegram, and WhatsApp.

19. The videos of CSAM were not viewed in their entirety but marked as evidence. Some of the things observed in the videos prior to stopping the viewing to make the determination they were CSAM were adults engaged children of varying prepubescent age ranges in sexual acts.

## FORFEITURE

20. For Chapter 110 child pornography offenses, 18 U.S.C. §§ 2253 and 2254 provide the forfeiture authority. Section 2254 provides for civil forfeiture of the same property subject to criminal forfeiture in Section 2253, as requested in a criminal seizure warrant pursuant to 18 U.S.C. § 981.

21. Section 2253 provides, in relevant part:

(a) Property subject to criminal forfeiture-

(1) any visual depiction described in section 2251, 2251A, or 2252, 2252A, 2252B, or 2260 of this chapter, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of this chapter;

(2) any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense, and;

(3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

22. Pursuant to these Rules, I request immediate forfeiture of any property, including items

19

of electronic evidence, which constitutes, contains, or was used to facilitate a crime involving child pornography or online child exploitation.

**CONCLUSION**

23.    Based on the foregoing, I respectfully submit there is probable cause to believe that Luis Eduard LARA Gonzalez is in possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) (possession of child pornography) and that the property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, are located on the cell phone as more fully described in Attachment A.

Respectfully submitted,

REBEKAH R STANLEY
Digitally signed by REBEKAH R STANLEY
Date: 2026.04.01 11:57:59 -07'00'

Rebekah R. Stanley
Special Agent
Homeland Security Investigations

Subscribed electronically and sworn telephonically this_____1st_____day of April 2026.

Hon. James F. Metcalf
United States Magistrate Judge